IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC DELVONNE SMITH,** | : | No. 3:07cv2294 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **CITY OF HAZLETON, and** | : | |
| **KEITH MCALARNEY,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court is defendants' partial motion to dismiss plaintiff's complaint (Doc. 11). Having been fully briefed and argued, the matter is ripe for disposition.

**Background**

Plaintiff is a resident of Hazleton, Pennsylvania. (Complaint (Doc. 1) (hereinafter "Complt") at ¶ 4). The city is a defendant in this case, as is Keith McAlarney, who is employed as a police officer by the Defendant City. (Id. at ¶¶ 5-6). The events giving rise to the instant lawsuit arise from the arrest of the plaintiff by Defendant McAlarney on January 11, 2006. (Id. at ¶ 8). On that date, plaintiff called police, requesting that they act as witnesses while he picked up his children from their mother's residence. (Id. at ¶ 9). Plaintiff and his children's mother were engaged in a custody dispute. (Id.). When Defendant McAlarney arrived on the scene, he informed plaintiff that he could not assist him in the custody matter. (Id. at ¶ 10). At the same time, McAlarney ran plaintiff's identifying information through a

federal database. (Id. at ¶ 11). He took plaintiff into custody based on a warrant issued in King County, Washington. (Id.). That warrant sought Edgar Michael Smith on a robbery charge. (Id.).

The man named in the warrant and plaintiff share the same birthday. (Id. at ¶ 12). The plaintiff provided Defendant McAlarney with a driver's license that showed his name was Eric Delvonne Smith, not Edgar Michael Smith. (Id. at ¶ 13). He also recited his social security number, which was different from the one used by Edgar Michael Smith. (Id.). Plaintiff also described tattoos on his body; these likewise showed that he failed to match the description of Edgar Michael Smith. (Id.). Defendant McAlarney did not examine these tattoos. (Id.). Plaintiff denied several times that he was the person sought in the warrant. (Id. at ¶ 14).

Plaintiff's continued to insist that he was not Edgar Michael Smith. He submitted fingerprints in an attempt to establish his identity. (Id. at ¶ 15). Defendant McAlarney falsely told plaintiff that his fingerprints had been established as a positive match to those of Edgar Michael Smith. (Id. at ¶ 16). The FBI assigned a different identification number to plaintiff's fingerprints than to those of Edgar Michael Smith. (Id. at ¶ 17). Plaintiff, who was taller and weighed less than Edgar Michael Smith, did not match the physical description provided in the warrant. (Id. at ¶ 18). Defendant McAlarney nevertheless insisted that plaintiff was the person named in the warrant and caused him to be incarcerated in the Luzerne County Correctional Facility. (Id. at ¶ 19).

2

Plaintiff remained incarcerated from January 11, 2006 until April 11, 2006, spending ninety-one days in jail. (Id. at ¶ 20). During his incarceration plaintiff made numerous complaints to prison officials and law enforcement agencies about his mistaken identity. (Id. at ¶ 21). Eventually, the Pennsylvania State Police used the Automated Fingerprint Identification System (AFIS) to confirm that plaintiff was not Edgar Michael Smith, the person named in the warrant. (Id. at ¶ 22). The Hazleton police department uses the AFIS system as well. (Id. at ¶ 23). Despite plaintiff's protests, however, neither the City nor Defendant McAlarney made use of the AFIS system to confirm plaintiff's identity. (Id. at ¶¶ 25-26). After the State Police made this discovery, the Luzerne County District Attorney's Office informed the Luzerne County Court of Common Pleas of this mistake, and the county immediately released the plaintiff. (Id. at ¶ 24).

On December 20, 2007, plaintiff filed the instant lawsuit, alleging that the defendants' conduct violated his constitutional rights. Count One of his complaint alleges that Defendant McAlarney violated his right to be free of illegal seizure, false arrest and imprisonment under the Fourteenth Amendment to the United States Constitution. (Id. at ¶ 37). Plaintiff also contends that his arrest and incarceration violated his Fourteenth Amendment Due Process rights. (Id. at ¶ 38). Plaintiff sought damages for these actions under 42 U.S.C. § 1983. Count Two of the complaint alleges, pursuant to 42 U.S.C. § 1983, that the Defendant City of Hazleton violated plaintiff's constitutional rights by following policies and customs established

3

by the City. Count Three raises a state-law false arrest/imprisonment claim against Defendant McAlarney. Count Four alleges intentional infliction of emotional distress against Defendant McAlarney. Plaintiff seeks compensatory damages, punitive damages, interest and attorneys fees on these claims. Plaintiff also filed a motion to proceed *in forma pauperis* (Doc. 2), alleging that he lacked sufficient means to pay the required filing fee for this action.

The court granted plaintiff's *in forma pauperis* motion on January 14, 2008 (Doc. 5) and allowed service of the complaint. After being served, defendants filed the instant motion to dismiss. (Doc. 11). The parties briefed the motion and the court entertained oral argument, bringing the case to its present posture.

**Jurisdiction**

Because plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, we have jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the

benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

**Discussion**

Defendants challenge only the fourth count of the complaint in their motion to dismiss.  That count raises an intentional infliction of emotional distress claim under state law against Defendant McAlarney.  The Pennsylvania Superior Court has adopted this tort by quoting section 46 of the Restatement (Second) of Torts: "'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'"  Hunger v. Grand Central Sanitation, 670 A.2d 173, 177 (Pa. Super. Ct. 1996); see also, Taylor v. Albert Einstein Medical Center, 754 A.2d 650, 652 (Pa. 2000) (finding that "[a]though we have never expressly recognized a cause of action for intentional infliction of emotional distress, and thus have never formally adopted this section of the Restatement, we have cited the section as setting forth the minimum elements necessary to sustain such a cause of action.").  The Pennsylvania Supreme Court has found that only the most serious conduct justifies recovery, since "[l]iability has been found only where the conduct has been so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Motheral v.

Burkhart, 583 A.2d 1180, 1188 (Pa. 1990) (quoting Restatement (Second) of Torts §46, comment d). "'[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery.'" Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005) (quoting Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. 1993)).

Though courts have been reluctant to find intentional infliction of emotional distress, they have found instances where the defendant's behavior was egregious and outrageous enough to justify imposing liability. See, e.g., Andrews v. City of Philadelphia, 895 F.2d 1469, 1487 (3d Cir. 1990) (finding that "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."); Papieves v. Kelly, 263 A.2d 118, 122 (Pa. 1970) (finding intentional infliction of emotional distress could lie in a claim that defendants intentionally prevented parents from recovering their son's corpse and buried it without their authorization). The question in this case is whether Defendant McAlarney's alleged actions, which led to plaintiff's unjustified three-month incarceration, constitute extreme and outrageous behavior.

Defendants rely specifically on a case from the United States District Court for the Western District of Pennsylvania, Miller v. County of Allegheny, No. 05cv733, 2006 WL 1330194 (W.D. Pa. May 16, 2006), to argue that plaintiff's claim must fail. In that case, the plaintiff, a guard at the Allegheny County Jail, was erroneously

6

arrested and charged with sexually assaulting a female inmate. Id. at *5.  Police arrived at Plaintiff C. Kevin Miller's home, arrested him in front of his wife and daughter, and transported him to the police station. Id.  At the police station, plaintiff maintained his innocence, claiming that police were actually looking for a former guard with a similar name, C. Richard Miller. Id.  C. Richard Miller had been discharged for fraternizing with female inmates. Id.  The court in Miller did not make clear how long the plaintiff was detained, but indicated that he initially "was arraigned in the media spotlight, and bail was set at $1,000." Id.  Immediately after bail was set, however, prosecutors informed the judge that they were uncertain that they had the proper suspect, and the magistrate allowed plaintiff to be released on his own recognizance. Id.  Within a week, prosecutors had charged the proper defendant. Id. at *6. Still, a court ordered the plaintiff to submit to fingerprinting. Id.  Plaintiff eventually sued, alleging emotional distress, harm to his reputation and financial loss. Id.  Pointing to other cases where a plaintiff was wrongly arrested after an official submitted a false affidavit of probable cause, the court found that "case law indicates that the defendants' complained-of acts are not so outrageous in character, nor so extreme in degree, as to support a claim for intentional infliction of emotional distress." Id. at *17.

The court finds the facts alleged in this case mandate a different outcome

from Miller and the cases cited therein.[1]  Miller is a certainly a case where a mistaken arrest occurred.  As in this case, the plaintiff had a very similar name to the actual suspect, but different physical characteristics.  Miller was fourteen years older, fifty pounds lighter and had much less hair than the other suspect.  The court in Miller does not indicate, however, that plaintiff's arrest occurred only because of those characteristics.  Instead, plaintiff claimed his innocence of the crime for which he was accused, insisting that someone (it is unclear from the case who) had mistakenly identified him.  Further, the case arose from an investigation of illegal behavior at the plaintiff's place of employment and plaintiff–however uninvolved he may have been–was most likely a preliminary subject of that investigation.  Prosecutors quickly recognized that they may not have the right suspect in the case and acted to ensure that a court was aware of their suspicions.  As a result, plaintiff apparently was released shortly after his arrest.

---

[1] In Atkinson v. City of Philadelphia, for instance, the plaintiff's home was searched for drugs pursuant to a warrant falsely obtained. Atkinson, 2000 WL 793193, No. 99cv1541 (E.D. Pa. June 20, 2000) at *4.  Plaintiff was not at home at the time of the arrest, but later turned himself in to police. Id. at *4-5.  He was acquitted after a trial. Id. The court found that these facts did not justify a claim of intentional infliction of emotional distress. Id. at *20.  Unlike the instant case, the plaintiff was the person named in the warrant, and enough probable cause for a trial apparently existed.  He was not held in jail for ninety-one days because no one bothered to verify his identity. In Gilbert v. Feld, the plaintiff had complained that he had been arrested in front of his grandmother, that police had threatened to call the FBI, accused him of being a thief, placed him in handcuffs, illegally transferred him from one holding facility to another, and arrested him without probable cause. 842 F. Supp. 803, 822 (E.D. Pa. 1993).  In that case, the judge found that police "had probable cause to initiate charges against and arrest Gilbert.  In light of that conclusion, it cannot be considered outrageous for [officers] to call Gilbert a thief or threaten to contact the authorities." Id.  Here, plaintiff was held absent any valid suspicion and not pursuant to any charges.

The situation here is vastly different: this is not simply a case of a mistaken arrest quickly reversed. Plaintiff was detained as the subject of an out-of-state warrant and contends that he had no connection to the events that led to the warrant. He alleges that Defendant McAlarney knew he was not the person named in the warrant, but held him anyway. He was not released immediately or shortly after his arrest, but instead had his liberty deprived for ninety-one days. Being imprisoned for ninety-one days pursuant to a warrant when the defendant either knew or should have known that plaintiff was not the person named in the warrant surely goes "beyond the 'mere insults, indignities . . . or annoyances which people are prepared to withstand.'" Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1274-75 (3d Cir. 1979). Indeed, this case bears similarities to Banyas v. Lower Bucks Hospital, where the court found that the plaintiff had stated a claim for intentional infliction of emotional distress when he alleged that doctors falsely attributed a death to his actions, even though the death was caused by their negligence. Banyas v. Lower Bucks Hospital, 437 A.2d 1236, 1238 (Pa. Super. Ct. 1981). The doctors' false statements left him facing assault and murder charges. Id. Like the plaintiff in Banyans, plaintiff here faced unnecessary and protracted limits on his liberty due to the unwillingness of the defendant to admit an error. The court will deny the defendants' motion. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC DELVONNE SMITH, | : | No. 3:07cv2294 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| CITY OF HAZLETON, and | : | |
| KEITH MCALARNEY, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### ORDER

**AND NOW**, to wit, this 6th day of August 2008, the defendants' motion to dismiss plaintiff's complaint (Doc. 11) is hereby **DENIED**.

                                        **BY THE COURT:**

                                        **s/ James M. Munley**
                                        **JUDGE JAMES M. MUNLEY**
                                        **UNITED STATES DISTRICT COURT**